**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| JULIE LAVAN, | : | Civil Action No.: _____ |
| | : | |
| | : | Honorable _____ |
| Plaintiff, | : | |
| | : | |
| v. | : | **VERIFIED** |
| | : | **COMPLAINT** |
| RICHARD PARRISH and | : | |
| DOLORES PARRISH, Individually, | : | |
| | : | |
| Defendants. | : | |
| | : | |

Plaintiff, Julie LaVan ("LaVan"), by and through her counsel, by way of Complaint says:

## I.    PARTIES

1.  Plaintiff Julie LaVan ("LaVan") is an adult individual who resides at 105 Muirfield Court, Moorestown, New Jersey 08057.

2.  Upon information and belief, Defendants Richard Parrish ("R. Parrish") and Dolores Parrish ("D. Parrish") (collectively "Parrish"), are adult individuals who reside at 11173 E. Feathersong Lane, Scottsdale, Arizona 85255.

3.  Defendant Richard Parrish is the President and Treasurer of Impact Environmental.

4.  Defendant Dolores Parrish is an employee of Impact Environmental and a beneficiary of its shares.

## II.    JURISDICTION & VENUE

5.  This Court has jurisdiction over the subject matter of this claim under 28 U.S.C. §1332(a)(1), diversity jurisdiction, as Plaintiff Julie LaVan is a resident/citizen of New Jersey and the

Defendants are citizens of Arizona and the matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs. 28 U.S.C. §1332(a)(4) .

## III.   **FACTUAL ALLEGATIONS**

6.    Impact Environmental Consulting, Inc. ("Impact Environmental" or the "Corporation") is a New York Corporation with its principal place of business located at 170 Keyland Court, Bohemia, New York 11716.

7.    Impact Materials, Inc. ("Impact Materials" or the "Corporation") is a New Jersey Corporation with its principal place of business located at 1000 Page Avenue, Lyndhurst, NJ 07071.

8.    Impact Environmental is in the business of consulting and remediating contaminated environmental sites.

9.    Plaintiff Julie LaVan is the Secretary and General Counsel of Impact Environmental and an attorney-at-law who owned and practiced at the LaVan Law Firm, in Moorestown, New Jersey.

**Impact Environmental**

10.    Impact Environmental has two shareholders.  Plaintiff LaVan currently holds 50% of all issued and outstanding shares of stock of Impact Environmental.

11.    Defendant R. Parrish, currently holds the other 50% of all issued and outstanding shares of stock of Impact Environmental.

12.    Defendant D. Parrish is the wife of R. Parrish and an employee of Impact Environmental and benefits from R. Parrish's breaches of duties.

13.  In 2008, Plaintiff LaVan, purchased her shares of the stock in Impact Environmental from R. Parrish pursuant to a Stock Purchase Agreement (the "Stock Purchase Agreement"). Exhibit "A".

14.  On October 18, 2017, the Parties entered into a Stockholder's Agreement. Exhibit "A".

15.  At the time of LaVan's acquisition of her shares of stock of Impact Environmental, Plaintiff assumed the role of shareholder, Secretary and General Counsel.  LaVan is also responsible for the Human Resources department.

**B. Impact Materials**

16.  Impact Materials is also in the business of consulting and remediating contaminated environmental sites.

17.  LaVan is a 37.5 % shareholder of Impact Materials.

18.  Defendant R. Parrish is a 37.5% shareholder of Impact Materials.

19.  Nathan Kalenich ("Kalenich") owns the remaining 25% of the shares of Impact Materials and is the President of Impact Materials.

20.  Impact Environmental and Impact Materials operate together.

21.   Defendant R. Parrish is a long-time friend of William LaVan, with whom Julie LaVan is engaged in a bitter divorce proceeding, docketed in the Superior Court of New Jersey, Burlington County Vicinage, Docket No.:  FM-03-975-19W (the "Divorce Action").

22.  Kalenich is also a long-time friend of William LaVan.

23.  Michael Leese is a friend of William LaVan and acted as the CFO, and now the General Counsel of the Corporations.

24.   William LaVan has a history of criminal conduct and was indicted in <u>United States of America v.  Enrico Nardini, et al</u>, Docket No.: 2:07-cr-00020-MAM-5, filed in July 2007 in the

United States District Court, Eastern District of Pennsylvania ("the Indictment"). Exhibit "B".

In that Indictment, William LaVan and his father William LaVan, Sr. were charged with False

Statements offenses in the context of a broader indictment related to the fraudulent operation of a

Philadelphia based, "strip-club" and fraud related to false documentation and false tax returns

submitted to banks to obtain loans on all the related real property as follows:

1.    Paragraphs 1, 4, and 8 of Count One are incorporated here.

2.    Defendants WILLIAM LAVAN, JR., and WILLIAM LAVAN, SR. were partners in various real estate investment partnerships that owned property in New Jersey and also owned and operated companies which held contracts to haul waste.

3.    On or about the following dates, in the Eastern District of Pennsylvania, the following defendants knowingly made, and aided, abetted, and willfully caused the making of, the following false statements and reports to the financial institution listed below for the purpose of influencing the actions of the financial institution upon loans, that is, the following defendants caused to be submitted to the financial institution in support of a loan application what purported to be true and correct copies of tax returns filed with the IRS, when, in truth and fact, the defendants then well knew that the tax returns submitted to the financial institution were not true and correct copies of the tax returns filed with the IRS but instead listed substantially more income than had been reported on the actual tax returns filed with the IRS:

| COUNT | DATE | DEFENDANTS | FINANCIAL INSTITUTION/LOAN AMOUNT | FALSE STATEMENT |
|---|---|---|---|---|
| 18 | 3-4-04 | ENRICO NARDINI WILLIAM LAVAN, JR. WILLIAM LAVAN, SR. | Allegiance Bank of North America $115,000 Loan | False copies of the 2001 and 2002 tax returns prepared by ENRICO NARDINI for WILLIAM LAVAN, JR. reporting adjusted gross income for |

| | | | | |
|---|---|---|---|---|
| | | | | *2001 as $36,090 and for 2002 as $464,757, when, in fact, LAVAN, JR failed to file any tax returns with the IRS for 2001 and 2002.* |
| *19* | *8-13-04* | *ENRICO NARDINI WILLIAM LAVAN, JR. WILLIAM LAVAN, SR.* | *Allegiance Bank of North America $250,000 Loan* | *False copies of the 2001, 2002 and 2003 tax returns of News and Coffee, LLC prepared by ENRICO NARDINI reporting News and Coffee, LLC's income for 2001 as $141,000, for 2002 as $208,102, and for 2003 as $207,262, when, in fact, News and Coffee, LLC failed to file any tax returns with the IRS 2001, 2002, and 2003.* |

Exhibit "C.

25. Michael Leese, the CFO and whom now identifies himself as the General Counsel of the

Corporations also has a criminal history as described in the attached Court of Common Pleas of

Delaware County Criminal Docket, <u>Commonwealth of Pennsylvania v. Michael Leese,</u> Docket

Number: CP-23-CR-0001247-1999, (Exhibit "D"), and the following news account (the "Peeping

Offenses"):



## Lawyer accused of taping women

UPPER DARBY, Pa. (AP) — A former intern prosecutor for Dauphin County was placed on three years probation for secretly videotaping three women in the bedrooms and bathrooms of his home.

One of the women, an assistant district attorney who rented a room from the defendant, urged the judge to impose jail time on attorney Michael Leese, 26, of Lansdowne, who pleaded no contest to invasion of privacy.

"This crime is disgusting. It's degrading. It's humiliating," said the woman, who was taped while she was partially nude in a bathroom in the Lansdowne home Leese shared with his girlfriend and several other single women.

"Another woman said Leese edited the tape, "creating a nameless woman to suit his particular fantasy. He had a mission: his own pleasure."

The third told the court Leese "just seems to be sorry he was caught."

Prosecutors said Leese set up hidden cameras in parts of the houses where the women had reason to expect privacy.

Leese, who was working for a Philadelphia law firm when he was charged in March 1999, apologized to the victims Friday and denied he did the taping for any sexual purpose.

Exhibit "E".

26. William LaVan and Michael Leese receive regular payments from Impact Environmental

Consulting. Leese receives a monthly stipend and William LaVan receives regular payments

through Bella Earth, LLC, an entity in which he owns all of the membership interests. Exhibit "F".

27. Julie LaVan was active in the Impact Environmental businesses and also acted as General Counsel for the Corporations. Exhibit "G".

28. As stated and described, Plaintiff LaVan's husband, William LaVan, has a criminal history. As a result of his extensive criminal history, including violations of the federal False Statements statutes. William LaVan is not permitted to be an owner of Impact Environmental or Impact Materials, the Corporations participate in remediation and other projects that require the EPA's participation. *See* Exhibits "B" and "C".

29. In the context of the Divorce Action, the Plaintiff, Julie LaVan for the first time, discovered, the extent of the payments made to Bella Earth, LLC, the entity owned by William LaVan. *See* Exhibit "F".

30. At or around the same time, Plaintiff discovered that there may be financial irregularities or misstatements in the financial information, potential false statements, submitted to the EPA by R. Parrish and Leese. Plaintiff became concerned that William LaVan might be involved in the Corporations and that there would be a repeat of the false statement conduct that was charged in the Indictment. Plaintiff only knew that what was submitted to the EPA "did not make sense" and repeatedly asked for documentation. Exhibit "H".

31. Plaintiff LaVan then immediately advised Defendant Parrish, Leese and Kalenich of the issues with the financial statements and other documents submitted to the EPA by the Corporations. In response, LaVan was then immediately terminated and literally "shut out" of the Corporations, including any rights to distributions or any other income. Exhibit "I". Also *see* Exhibit "H".

32. Defendant Parrish then sought to buy-out the Plaintiff's ownership in the Corporations, but failed to conclude that dialogue. Exhibit "J".

33. Instead, and as further retaliation, Parrish and the Corporations identified Plaintiff LaVan as a Defendant in a matter brought in the Supreme Court of New York, Index No.: 606133/2019 seeking an Order prohibiting Plaintiff Julie LaVan from participating in any of the Corporations' activities, painting her as unstable with alleged conduct solely stemming from the Divorce Action; not her role in the Corporations. Plaintiff believes this is a further effort by Defendant R. Parrish to advance his friend, William LaVan's interests.   Exhibit "K".

34. As stated, Julie LaVan was "cut off" from payments of salary and distribution, as well as expense reimbursements.  Exhibit "L".

35. During this time, however, William LaVan continued to be paid amounts through Bella Earth, LLC and also receives curiously large weekly payments of Ten Thousand Dollars ($10,000.00) each from the Corporations his "friends" now control. *See* Exhibit "F".

36. Plaintiff continued to demand financial information for the Corporations related to the EPA matters and otherwise. Plaintiff now feared that Defendant R. Parrish did not declare as income amounts he received from the Corporations related to the following and that the following were improperly reflected in the financial statements and tax returns submitted to the EPA:

    a.   Payment of personal New York State income taxes;

    b.   Payment for personal Arizona State income taxes;

    c.   Cash withdraws from the business accounts;

    d.   Payments for an Arizona home;

    e.   Payments for a New York home;

    f.   Airfare and related costs for travel to and from Arizona, among other locations;

    g.   Payment of dues and costs for membership in Silverleaf Country Club in Scottsdale Arizona;

    h.   Payment of dues and costs for membership in New York Country Club;

    i.   Arizona home remodel and construction purchases;

    j.   New York home remodel and construction purchases;

k.   Airline tickets for outside business ventures and other personal use;

l.   Hotel bills for personal travel excursions;

m.   Personal drivers and housekeepers;

n.   Utility bills and expenses for private residences;

o.   Non-business meals and travel expenses; and

p.   Other purchases each as detailed in the Corporations books and records.

Exhibit "M".

37. In addition to the independent wrongful nature of the foregoing retaliatory and other conduct, Defendant R. Parrish violated the terms of the Stockholder's Agreement through (1) failure to distribute profits to Plaintiff ;(2) attempting to terminate Plaintiff without a proper vote and without any cause; (3) terminating Plaintiff Julie LaVan's role as an officer and director of the Corporations (Exhibit "N");(4) failing to provide Plaintiff with the books and records of the Corporations, when demanded; and (5) failing to distribute for taxes (Exhibit "O").

38. Plaintiff has repeatedly demanded access to the Corporations' books and records as it was her right pursuant to Section 18(b) of the Stockholder's Agreement. Exhibit "A".

> *(b) At all times, the Corporation shall, and shall cause its directors, officers and employees to, afford each Stockholder and his, her, or its representatives reasonable access during normal business hours to (i) the Corporation's properties, offices, plants and other facilities and (ii) the corporate, financial and similar records, reports and documents of the Corporation, including, without limitation, all books and records, minutes of proceedings, internal management documents, reports of operations, reports of adverse developments, copies of any board of director letters to Stockholders, and to permit each Stockholder and his, her, or its representatives to examine such documents and make copies thereof.*

39. Kalenich, Leese and Defendant R. Parrish refused to provide the Plaintiff with access to the Corporations books and records.  Rather, Defendant R. Parrish terminated Plaintiff and ceased

the payment of her salary and distributions and advised Leese and Kalenich not to communicate financial information with Plaintiff.

40. Defendants' actions deprived the Plaintiff of possession or use of the Corporations' assets and funds in question.

41. The foregoing conduct is, of course, in violation of the terms of the Stockholder's Agreement which provides:

> (d) The Corporation shall employ each of the Stockholders to provide such services, on such terms and conditions as the respective Board of Directors shall determine, provided that, unless such Board of Directors shall otherwise determine, the compensation of the Stockholders shall at all times be equal.

> Officers and Directors.

> (c)  Each of the Stockholders agrees to use his, her, or i ts best efforts to cause the Board of Directors to vote for and retain the following persons to serve as the officers of the Corporation for so long as the Stockholder continues to own Stock:

> Richard Parrish          President and Treasurer
> Julie A. LaVan           Vice President and Secretary

> Employment.

> (d)  The Corporation shall employ each of the Stockholders to provide such services, on such terms and conditions as the respective Board of Directors shall determine, provided that, unless such Board of Directors shall otherwise determine, the compensation of the Stockholders shall at all times be equal.

> Distributions.

> (e)   The Corporation hereby covenants that they it distribute within one hundred (100) days after the end of each calendar year for which the Election is in effect, an amount of cash equal to the Corporation's taxable income,

> *multiplied by the highest marginal federal income tax rate applicable to any of the Stockholders, such rate to reflect the deductibility of applicable state, county and local taxes, if any, against federal income taxes, (or the highest combined marginal federal, state and local income tax rate including those states in which the corporation is qualified as the equivalent of an "S corporation") pro rata to each Stockholder of record as of December 31; provided, however, that no such distribution shall be made in the event the Board of Directors determines, in its sole discretion, that funds are not legally available for such distribution. The Corporation shall make quarterly or other more frequent periodic distributions on account of the annual distribution contemplated hereby, sufficient for the Stockholders to satisfy their respective estimated tax obligation in respect of the Corporation's earnings.*

Exhibit "A".

42. As officers and directors of the Corporations; Defendant R. Parrish, Leese and Kalenich all owed certain fiduciary duties to the Corporations and their shareholders. Each of Parrish, Leese and Kalenich, acting in the capacity of an officer and director, failed to act in good faith and breached their fiduciary duty of loyalty and care.

43. Defendant Parrish breached nearly every provision of the Stockholder's Agreement and shut-out Plaintiff LaVan to help his long-time friend and in so doing violated his duty to both the Corporations and to Plaintiff Julie LaVan.

44. Each of the Defendants R. Parrish and D. Parrish engaged in the following wrongful conduct:

    a. Wrongfully notifying customers, clients and business associates that LaVan resigned (Exhibit "N");

    b. Dismissing LaVan as Corporation's Secretary and General Counsel (Exhibit "N");

    c. Denying LaVan access to the Corporations' employees and customers (Exhibit "P");

d. Conducting meetings and the Corporations' corporate decision making, without the consent or authority of LaVan, in breach of the Stockholders' Agreement (Exhibit "Q");

e. Ceasing LaVan's salary (Exhibit "L");

f. Ceasing LaVan's distributions (Exhibit "L");

g. Failing to provide tax payments in breach of the Stockholders' Agreement pursuant to Section 6 of the Stockholder's Agreement. (*See* Exhibit "A") ;

h. Failing to provide financial documents as requested by LaVan (Exhibit "M");

i. Failing to provide access and authority to bank accounts to LaVan (Exhibit "M");

j. Failing to provide access to employees that are responsible for providing financial information to LaVan (Exhibit "J") ;

k. Instructing employees, clients and vendors not to respond to LaVan on business matters (Exhibit "J");

l. Failing to respond to LaVan's multiple requests for information related to financial matters, pursuant to the Stockholders' Agreement (Exhibit "M");

m. Diverting corporate funds and assets by ceasing to make distributions and instead distributing those funds to Willian LaVan (Exhibit "F");

n. Causing LaVan to experience severe financial distress by decreasing and then, ceasing salary and distributions, a squeeze-out (Exhibit "L");

o. Intentionally harming LaVan's personal and business credit by failing to pay the Corporations' bills associated with her accounts (Exhibit "R");

p. Ceasing healthcare for LaVan and her children (Exhibit "S");

q. Failing to provide tax payments and reallocating distributions into income in breach of the Stockholders' Agreement Provision 8(e) (Exhibit "A");

r. Purposefully devaluing the Company to Plaintiff LaVan (Exhibit "J");

s. Interfering with the operation of LaVan's Law Firm (Exhibit "J");

t. Failed to provide tax and other information causing harm to LaVan (Exhibit "O");

u. Authorizing Dolores Parrish to interfere with the payment of LaVan's credit and expenses, and ultimately, her employment (Exhibit "R");

v. Failing to pay and ceasing certain business expenses for LaVan, customarily paid for by the Corporation (Exhibit "R");

w. Causing Plaintiff to default on Corporate and business insurance premium payments; and

x. Paying nonrelated employees out of LaVan's salary (Exhibit "T").

45. Further, Defendant R. Parrish repeatedly attempted to schedule a Stockholder and Director Meeting without notifying Plaintiff and threatening to hire security to prevent her from attending;

    i.   In an email dated April 2, 2019, R. Parrish states, "you don't need to show. But the meeting will happen without you.  You have no authority.  Bylaws establish me as the Arbiter of meetings." Exhibit "Q".

    ii.  Further R. Parrish stated, "be advised for the safety of the other shareholders, there will be an attorney present as well as a security detail to check your documented propensity towards physical violence."  Exhibit "Q".

46. Leese and Kalenich each permitted Parrish to act in the manner described and turned a blind eye to his misuse of the Corporations' funds.

47. Plaintiff LaVan made every effort to obtain appropriate relief from Defendants in the most palliative manner to no avail.  Exhibit "U".

48. Plaintiff LaVan is essentially a whistleblower and was terminated by Defendant R. Parrish because (1) she questioned the financial and other information submitted to the EPA; (2) the payments made to officers and directors, including Defendants R. Parrish and D. Parrish payments made to third-parties; and (3) particularly because she is engaged in the Divorce Action with William LaVan; all inappropriate bases for the responsive acts by the Defendants.

49. Defendants have oppressed and retaliated against shareholder LaVan through, the foregoing and the following actions:

    a.  Wrongfully notifying customers, clients and business associates that LaVan resigned (Exhibit "N");
    b.  Dismissing  LaVan as Corporation's Secretary and General Counsel (Exhibit "N");
    c.  Denying  LaVan access to the Corporations' employees and customers (Exhibit "P");
    d.  Conducting meetings and the Corporations' corporate decision making, without the consent or authority of  LaVan, in breach of the Stockholders' Agreement (Exhibit "Q");
    e.  Ceasing  LaVan's salary (Exhibit "L");
    f.  Ceasing  LaVan's distributions (Exhibit "L");

g.  Failing to provide tax payments in breach of the Stockholders' Agreement pursuant to Section 6 of the Stockholder's Agreement. (*See* Exhibit "A") ;

h.  Failing to provide financial documents as requested by LaVan (Exhibit "M");

i.  Failing to provide access and authority to bank accounts to LaVan (Exhibit "M");

j.  Failing to provide access to employees that are responsible for providing financial information to LaVan (Exhibit "J") ;

k.  Instructing employees, clients and vendors not to respond to LaVan on business matters (Exhibit "J");

l.  Failing to respond to  LaVan's multiple requests for information related to financial matters, pursuant to the Stockholders' Agreement (Exhibit "M");

m.  Diverting  corporate funds and assets by ceasing to make distributions and instead distributing those funds to Willian LaVan (Exhibit "F");

n.  Causing  LaVan to experience severe financial distress by decreasing and then, ceasing salary and distributions, a squeeze-out (Exhibit "L");

o.  Intentionally harming  LaVan's personal and business credit by failing to pay the Corporations' bills associated with her accounts (Exhibit "R");

p.  Ceasing healthcare for  LaVan and her children (Exhibit "S");

q.  Failing to provide tax payments and reallocating distributions into income in breach of the Stockholders' Agreement Provision 8(e) (Exhibit "A");

r.  Purposefully devaluing the Company to Plaintiff LaVan (Exhibit "J");

s.  Interfering with the operation of  LaVan's Law Firm (Exhibit "J");

t.  Failed to provide tax and other information causing harm to LaVan (Exhibit "O");

u.  Authorizing Dolores Parrish to interfere with the payment of LaVan's credit and expenses, and ultimately,  her employment (Exhibit "R");

v.  Failing to pay and ceasing certain business expenses for LaVan, customarily paid for by the Corporation (Exhibit "R");

w.  Causing Plaintiff to default on Corporate and business insurance premium payments; and

x.  Paying nonrelated employees out of LaVan's salary (Exhibit "T").

50. Finally, in April 2019, Plaintiff noticed that the Corporations' camera that was set-up in her office space was videotaping and following her around in the room. That activity, coupled with the incredibly contentious notes of the Divorce Action caused Plaintiff to "re-evaluate" the cameras in her home, cameras were found.  Those cameras were found to face Plaintiff's bed and the Plaintiff's minor child's bed.

51. Plaintiff then filed a complaint seeking a temporary restraining order against William LaVan relative to the installation of the camera in the Plaintiff's office.

52. The relevance of the foregoing is to identify the extent to which William LaVan may go to reach the Plaintiff both personally and economically, including enlisting the aide of his friends in the Corporations.

## COUNT ONE
## BREACH OF CONTRACT

53. Plaintiff incorporates by reference paragraphs 1 through 52 of this Complaint as if set forth in length herein.

54. The Parties executed a Stockholder's Agreement and the Stockholders Agreements' terms do not permit a Shareholder to act unilaterally to terminate another Shareholder's employment. R. Parris breached the Shareholder's Agreement when he unilaterally terminated Plaintiff's employment.

55. The Stockholder's Agreement does not permit a Stockholder to unilaterally determine compensation or distributions. Even terminated, Plaintiff was entitled to her distributions of corporate profits. R. Parrish unilaterally determined to strip Plaintiff of her distributions, again, a breach of the Stockholder's Agreement.

56. Finally, R. Parrish, by unilaterally submitting and collecting amounts for personal expenses and directing payments of these expenses by Corporations' employees, including D. Parrish, is in breach of the equal compensation and distribution provisions of the Stockholder's Agreement.

57. Defendant R. Parrish's conduct has caused Plaintiff economic harm.

**WHEREFORE, Plaintiff LaVan demands judgment as follows:**

    A.        Appointment of a Receiver or other fiscal agent to manage the affairs and operations of the company;

B.     Direct the Defendant Director to account to Plaintiff LaVan and the Corporations for, and to pay the Corporations, all damages sustained or to be sustained by them by reason of the wrongs alleged herein;

C.     Direct Defendant to pay interest at the highest rate allowable by law on the damages sustained by the Corporations as a proximate result of the Director Defendant's culpable conduct;

D.     Award Plaintiff the costs and disbursements of this action including reasonable attorney's fees and expenses; and

E.     Grant such other further relief as the Court may deem just and proper.

## COUNT TWO
## BREACH OF FIDUCIARY DUTY

58. Plaintiff incorporates by reference paragraphs 1 through 57 of this Complaint as if set forth in length herein.

59. As an officer and director of the Corporations, Defendant R. Parrish owed certain fiduciary duties to the Corporations and its shareholders.

60. R. Parrish engaged in conduct detriment of the best interests of the Corporations and the Plaintiff.

61. R. Parrish's expense payments with corporate funds placed the Plaintiff at risk for claims of tax and other fraud.

62. In addition, R. Parrish's submission to the EPA of inaccurate financial and other information, similarly places the Corporations and the Plaintiff at risk for federal and other claims of fraud, false claims and false statements.

63. The foregoing conduct by R. Parrish is a breach of his fiduciary duty and has caused Plaintiff harm.

64. As a direct and proximate result of Defendant's breach of fiduciary duties, Plaintiff has suffered damages.

65. Plaintiff's professional building is used for both the practice of law and for the business of the Corporations. There is one camera located in a conference room.

66. This activity took place while R. Parrish was operating the corporations and on "his watch". R. Parrish permitting that type of activity is, at a minimum, a breach of his duty to the Corporations and to the Plaintiff.

**WHEREFORE, Plaintiff LaVan demands judgment as follows:**

A.     Appointment of a Receiver or other fiscal agent to manage the affairs and operations of the Corporations;

B.     Direct the Defendant Director to account to Plaintiff LaVan and the Corporations for, and to pay the Corporations, all damages sustained or to be sustained by them by reason of the wrongs alleged herein;

C.     Direct Defendant to pay interest at the highest rate allowable by law on the damages sustained by the Corporations as a proximate result of the Director Defendant's culpable conduct;

D.     Award Plaintiff the costs and disbursements of this action including reasonable attorney's fees and expenses; and

E.     Grant such other further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted,

HANAMIRIAN LAW FIRM, P.C.

John M. Hanamirian, Esquire
New Jersey I.D.: 002861992
40 E. Main Street
Moorestown, New Jersey 08057

*Attorney for Plaintiff, Julie LaVan*

Dated: <u>May 20, 2019</u>

## <u>VERIFICATION</u>

I, Julie A. LaVan, hereby verify that the facts set forth in this Verified Civil Action Complaint are true and correct to the best of my knowledge, information and belief.

This statement is made subject to the penalties of Federal Rules of Civil Procedure, relating to unsworn falsification to authorities.

Dated: _May 17, 2019_                    _Julie A. LaVan_
                                               Julie A. LaVan